Alfred M. MASSEY

v.

WILLIAMS–McWILLIAMS, INC. and
Employers Liability Assurance
Corporation, Ltd.

Civ. A. No. 66–34.

United States District Court
E. D. Louisiana,
Baton Rouge Division.

Dec. 27, 1967.

W. P. Macmurdo, Percy, Macmurdo &
Gray, Baton Rouge, La., for plaintiff.

Christopher Tompkins, E. Burt Harris,
Deutsch, Kerrigan & Stiles, New Orleans,
La., for defendant, Williams-McWilliams
Industries, Inc. and Employers Liability
Assur. Corp.

Rufus C. Harris, Jr., Kaul J. M.
Buhler, II, Terriberry, Rault, Carroll,
Yancey & Farrell, New Orleans, La., for
third-party defendants, Otto Candies,
Inc. and Clyde W. Pregeant.

WEST, Chief Judge:

Plaintiff, Alfred M. Massey, brings
this suit under the provisions of the
Jones Act, 46 U.S.C.A. § 688, seeking

damages in the sum of $375,000.00 for personal injuries allegedly sustained while in the course of his employment as a seaman with defendant, Williams-Mc-Williams, Inc. Joined also as a defendant is Employers Liability Assurance Corporation, Ltd., the liability insurer of Williams-McWilliams, Inc. Plaintiff alleges that he was injured while in the process of leaving the derrick barge DB #1, the vessel upon which he was employed, and boarding a crewboat, the CHICKCHARNEY. He alleges that his injuries were caused by the negligence of his employer, Williams-McWilliams, the operator of the DB #1, in the following respects: (1) in failing to provide a safe place in which to work, (2) in failing to have the crewboat come along the leeward side of the barge, (3) in failing to have adequate equipment aboard to move plaintiff from the DB #1 to the crewboat CHICKCHARNEY, (4) in failing to have an adequate captain or adequate person skilled in navigation and seamanship aboard the DB #1, (5) in not making certain that the CHICK-CHARNEY deck was safe for seamen to jump or step onto from the ladder of the DB #1, and (6) in generally failing to provide a safe and seaworthy vessel.

Defendant Williams-McWilliams answers denying any negligence on its part or on the part of anyone for whom it is legally liable, and further denying that the DB #1 was in any way unseaworthy. Williams-McWilliams then filed a counterclaim against plaintiff to recover $3,500.00 paid by it to plaintiff under the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C.A. §§ 901–950. Defendant also filed a third party complaint against Otto Candies, Inc., the owner and operator of the tug NICK CANDIES, which had the DB #1 in tow at the time of the alleged accident, and against Clyde W. Pregeant, the owner and operator of the crewboat CHICK-CHARNEY, seeking indemnity from one or both of said third party defendants if defendant, Williams-McWilliams should be found to be liable for plaintiff's injuries.

When plaintiff filed his complaint, and when he approved the pre-trial order entered in this case, he based his claim solely and entirely upon the provisions of the Jones Act. He did not seek recovery under the provisions of the General Maritime Law of Unseaworthiness. He merely alleged the unseaworthiness of the crewboat CHICKCHARNEY as an element of defendant's negligence, relying on the allegation that defendant was negligent in allowing plaintiff to board what he calls an unseaworthy vessel. The unseaworthiness as such of the CHICK-CHARNEY, if any, could not, of course, be chargeable to the defendant, Williams-McWilliams, who was neither the owner nor operator of that vessel, and plaintiff did not sue the owner or operator of the CHICKCHARNEY. But in his post-trial brief plaintiff urges that he did invoke the provisions of the General Maritime Law of Unseaworthiness when he stated in his complaint that defendant, Williams-McWilliams was negligent "in failing to provide a safe and seaworthy vessel." If this allegation is sufficient to invoke the General Maritime Law of Unseaworthiness, the unseaworthiness alleged must, of course, refer to the unseaworthiness of the vessel DB #1, which was the only vessel involved that was either under charter to or being operated by the defendant, Williams-McWilliams, and not to the crewboat CHICKCHAR-NEY.

In any event the Court concludes, after hearing the evidence and arguments of counsel, that the accident complained of was not in any way caused by either the negligence of the defendant, Williams-McWilliams, the unseaworthiness of the DB #1, or the unseaworthiness of the crewboat CHICKCHARNEY. In connection with this conclusion the Court now makes the following Findings of Fact and Conclusions of Law.

### FINDINGS OF FACT

1.

Plaintiff, Alfred M. Massey, is a citizen of the full age of majority of the State of Louisiana, and the defendant,

Williams-McWilliams Industries, Inc., is a Delaware corporation authorized to do and doing business in the State of Louisiana.

2.

Employers Liability Assurance Corporation, Ltd. is the liability insurer of defendant, Williams-McWilliams Industries, Inc.

3.

Otto Candies, Inc., is a Louisiana corporation doing business in the State of Louisiana, and Clyde W. Pregeant is a citizen of the State of Louisiana.

4.

At all times pertinent hereto, the defendant, Williams-McWilliams, was the bareboat charterer and operator of a derrick barge known as the DB #1, which was owned by Humble Oil & Refining Company, and which was a vessel within the contemplation of the Jones Act, 46 U.S.C.A. § 688.

5.

At all times pertinent hereto, the crewboat CHICKCHARNEY was owned and operated by third party defendant, Clyde W. Pregeant. The CHICKCHARNEY is a crewboat known as an Equitable Water Taxi, 54 feet long, 14 feet wide, with twin screws powered by two 500 H.P. engines.

6.

At all times pertinent hereto the plaintiff, Alfred M. Massey, was employed by defendant Williams-McWilliams as a seaman as contemplated by the provisions of the Jones Act, 46 U.S.C.A. § 688, and was in the course and scope of said employment at the time of the accident herein sued upon.

7.

The DB #1 is a derrick barge used in drilling for oil in the offshore areas. It is approximately 300 feet long, 90 feet wide, and about 19 feet deep. The barge is owned by Humble but was, at all times pertinent hereto, under bareboat charter to the defendant, Williams-McWilliams, and was under the complete control of said defendant at the time of the accident herein sued upon. Humble in no way participated in the use or movement of said barge while it was under charter to the defendant.

8.

On September 7, 1965, the DB #1 was being towed by the tug NICK CANDIES from the area in the Gulf of Mexico known as Block 115 of the Ship Shoal area to the Grand Isle area off the coast of Louisiana. At the time of the accident sued upon she was at a point about 25 miles offshore, traveling under tow, at about three miles per hour in an easterly direction. Seas were running at four to six feet before an easterly breeze of 15 to 20 miles per hour.

9.

For a period of about four years preceding this accident, the CHICKCHARNEY had traveled out to the DB #1 twice each day, at 7:00 a. m. and at 3:00 p. m. for the purpose of transferring personnel off of and onto the barge. Her services were employed by defendant for this purpose.

10.

On September 7, 1965, at about 2:30 p. m., the CHICKCHARNEY came alongside the DB #1 and moored by use of bow and stern lines, with her port quarter adjacent to the starboard bow ladder of the DB #1 for the purpose of taking personnel from the DB #1 and transporting them ashore. Due to the direction in which the DB #1 was being towed, i. e., headon into the wind and seas, there was actually no lee or protected side for the CHICKCHARNEY to tie up to. But from the evidence, it is clear that the condition of the wind and seas was not unusual, and there were no conditions existing that called for the DB #1 changing course in order to form a lee. Personnel were transferred to and from the crewboat daily under the same or similar conditions, and there is no evidence whatsoever to indicate that any change in course or speed of the DB #1 was re-

quired in order to transfer personnel from the DB #1 on September 7, 1965.

### 11.

On the day in question persons transferring from the DB #1 to the crewboat disembarked from the DB #1 and boarded the crewboat by means of a ladder welded to the starboard bow of the DB #1. This ladder was constructed of six inch angle irons welded to the side of the vessel with pieces of pipe welded to the angle irons to form the rungs of the ladder. Thus, the rungs of the ladder are six inches out from the side of the vessel. On each side of the ladder there is a ten inch timber extending from the top to the bottom of the ladder so that when the crewboat or other vessel comes alongside it will hit against the timbers, leaving a four inch space between the boat and the rungs of the ladder. The ladder runs from the deck of the DB #1 to the water level.

### 12.

On September 7, 1965, when the CHICKCHARNEY came alongside the ladder on the starboard bow of the DB #1, plaintiff was the first of some seventeen men to transfer from the DB #1 to the crewboat. All but the plaintiff made the transfer safely. When the plaintiff descended the ladder he either jumped or stepped from the ladder to the crewboat, and when he landed on the deck of the crewboat his feet went out from under him and he fell. He got up once or twice only to fall again. He alleges that he injured his back as a result of these falls. After he finally got steady on his feet he went into the passenger cabin of the crewboat and sat down for the trip to shore. He did not complain to anyone about being injured, nor did he complain to anyone about what caused him to fall. His contention now is that there was, or "must have been" oil on the deck of the CHICKCHARNEY that caused him to slip and fall. He admits that he saw no oil there but he says that he could smell it and he is sure that "there must have been oil there." But he did not complain or report to anyone the presence of oil, nor did he advise or warn the sixteen persons following him onto the CHICKCHARNEY that there was oil on the deck. None of the other sixteen people saw or smelled any oil, and none encountered any unusual difficulty in transferring to the CHICKCHARNEY. All of the men boarded the CHICKCHARNEY in essentially the same way, i. e., by descending the fixed ladder on the side of the DB #1 to a point where they were approximately level with the afterdeck of the crewboat, or with the handrail running around its deck. This handrail is about two and a half or three feet high and about four or five inches inboard on the CHICKCHARNEY. Some of the men stepped on the handrail and then stepped or jumped down to the deck; some men stepped on the outer edge of the deck and then simply stepped over the handrail to the deck of the CHICKCHARNEY. None had any difficulty in negotiating this transfer. All of these people, including the plaintiff, stated that this was the usual manner in which they boarded the CHICKCHARNEY, and all of them, including the plaintiff, had done this many, many times in similar weather without incident or difficulty.

### 13.

There was no evidence of any kind offered in this case that could possibly justify a conclusion that the DB #1 was in any way unseaworthy.

### 14.

█ If plaintiff is to recover, he would have to show that his accident was caused by the negligence of the defendant, his employer, Williams-McWilliams. This he has failed to do. The Court finds, as a fact, that there was no negligence in the manner in which the DB #1 was handled, nor was there any unseaworthy condition existing insofar as her crew, hull, gear or other appurtenances are concerned. As to plaintiff's claim that the defendant was negligent in allowing the plaintiff to transfer to a crewboat that was unsafe or unseaworthy, the Court finds no merit. Plain-

tiff's only claim of unseaworthiness of the CHICKCHARNEY is that there was oil on the deck that caused him to slip and fall. The testimony offered on this contention falls woefully short of a preponderance of the evidence needed to sustain such a contention. The evidence greatly preponderates to the contrary. The CHICKCHARNEY had been at sea for over two and a half hours with her decks awash immediately prior to this accident. She had taken on fuel at Grand Isle prior to the start of her trip, and there was no evidence at all to prove that even at that time any fuel oil had been spilled on her deck. Indeed, the evidence is entirely to the contrary. In addition to this, the evidence is convincing that even if some oil had spilled on the deck, it would have been washed off by the wind and the sea long before the CHICKCHARNEY reached the DB #1 on September 7, 1965.

### 15.

Plaintiff stated several times during his testimony that the sole and only cause of his fall was the presence of oil, which he did not see, on the deck of the CHICKCHARNEY. He has completely failed to carry the burden of proving this assertion. The evidence is overwhelmingly against him.

### 16.

Although plaintiff contends that there was diesel oil or "some slippery substance" on the deck of the crewboat and that this was what caused him to fall, this is not borne out by the evidence. None of the other men who followed plaintiff aboard the CHICKCHARNEY slipped or fell and none reported seeing or smelling diesel fuel or any other foreign substance on the deck where plaintiff fell. The rest of the crew boarded in the same fashion as did plaintiff and in the same general area of the CHICKCHARNEY. The deckhand who walked to the stern to secure the stern line of the CHICKCHARNEY to the DB #1, and who remained in that area to assist the stowing of luggage, did not notice anything other than salt water or spray on the deck. The plaintiff, while now saying that there was oil on the deck, did not complain at the time of oil being on the deck, nor did he attempt in any way to warn his fellow employees or to even suggest to them that there was oil on the deck which caused him to fall and which might cause them to fall if they jumped or stepped into it. The Court finds, as a fact, that the allegation of the plaintiff that there was oil on the deck of the CHICKCHARNEY which caused him to fall is only a personal conclusion of his, based upon a simple assumption, supported by no evidence whatsoever.

## CONCLUSIONS OF LAW

### 1.

The Court finds that it has jurisdiction over this matter under the provisions of Title 46, U.S.C.A. § 688 and pursuant to its general admiralty and maritime jurisdiction.

### 2.

■ Absent a showing of negligence on the part of the defendant, Williams-McWilliams, or on the part of someone for whom said defendant may be legally responsible, plaintiff could, of course, have no claim under Title 46, U.S.C.A. § 688, commonly called the Jones Act. Since it is the opinion of this Court that plaintiff has failed to prove any negligence whatsoever on the part of the defendant, or any of its agents, employees, or representatives, either causing or contributing to the cause of the accident of September 7, 1965, he cannot, as a matter of law, recover damages from the defendant, Williams-McWilliams, or from the defendant, Employers Liability Assurance Corporation, Ltd., under the provisions of the Jones Act. Elliott v. Jones & Laughlin Steel Corp., 166 F. Supp. 731 (D.C.W.D.Pa.–1957), aff'd 259 F.2d 959 (C.A. 3–1958); De Zon v. American President Lines, 318 U.S. 660, 63 S.Ct. 814, 87 L.Ed. 1065 (1943).

### 3.

■■ Insofar as plaintiff now avers that he is also seeking damages under the

**457**

General Maritime Law based upon the claim of unseaworthiness, it has been settled law since The Osceloa, 189 U.S. 158, 23 S.Ct. 483, 47 L.Ed. 760, was decided by the United States Supreme Court in 1903 that the vessel and its owner and/or operator are liable to indemnify a seaman for injuries caused by unseaworthiness of the vessel or its appurtenant appliances and equipment. Mahnich v. Southern S.S. Company, 321 U.S. 96, 64 S.Ct. 455, 88 L.Ed. 561. But in this case the only vessel here involved that was owned and/or operated by the defendant, Williams-McWilliams, was the DB #1, and there was absolutely no credible evidence whatsoever to sustain a claim that that vessel was in any way unseaworthy. Thus, as a matter of law, the plaintiff cannot recover damages based upon an allegation, without proof, of unseaworthiness of the DB #1.

4.

■ The only claim of unseaworthiness supported by any evidence at all, that evidence being nothing more than the unsupported testimony of the plaintiff himself, was plaintiff's claim that oil on the deck of the crewboat CHICKCHARNEY rendered that vessel unseaworthy. But the CHICKCHARNEY was neither owned nor operated by the defendant Williams-McWilliams, and hence, as a matter of law, plaintiff could not recover damages under the General Maritime Law from Williams-McWilliams or its insurer for alleged unseaworthiness of a vessel neither owned nor operated by that defendant, even if such a condition had been found to exist.

5.

■ Since the Court concluded as a matter of fact that neither the defendant, Williams-McWilliams, nor anyone for whom said defendant could be held legally liable was guilty of any negligence whatsoever either causing or contributing to the cause of plaintiff's accident of September 7, 1965, and since, as a matter of law, the employer of a seaman has every right to expect the seaman to cope with the ordinary hazards that simply must prevail even on a seaworthy vessel, Creppel v. J. W. Banta Towing, Inc., 202 F.Supp. 508 (D.C.E.D.La.–1962); Colon v. Trinidad Corp., 188 F.Supp. 97 (D.C. S.D.N.Y.–1960), the Court now finds as a matter of law that plaintiff has no right of recovery herein from the defendant, Williams-McWilliams, or from the defendant, Employers Liability Assurance Corporation, Ltd., nor from any other person whomsoever, either under the provisions of the Jones Act, 46 U.S. C.A. § 688, nor under the provisions of the General Maritime Law, and judgment will be entered herein accordingly.