**Alfred M. MASSEY**

v.

**WILLIAMS–McWILLIAMS, INC., and Employers Liability Assurance Corporation, Ltd.**

**Civ. A. No. 66–34.**

United States District Court,
E. D. Louisiana,
Baton Rouge Division.

Sept. 1, 1970.

W. P. Macmurdo, Baton Rouge, La., for plaintiff.

Christopher Tompkins, New Orleans, La., for defendants.

WEST, Chief Judge:

This Jones Act, 46 U.S.C.A. § 688, case is based upon an injury to a seaman who was attempting to leave the DB–1, a derrick barge, to board the crewboat Chickcharney. When the plaintiff, Alfred M. Massey, jumped or stepped from the DB–1 ladder to the crewboat, his feet went out from under him and he fell. He got up once or twice, only to fall again each time. After the trial, this Court held that the vessel was not unseaworthy and that the shipowner-employer was free of negligence and therefore denied plaintiff's demands. D.C., 277 F.Supp. 452. But on appeal, the United States Court of Appeals for the Fifth Circuit rejected that holding, concluded that there was negligence on the part of the shipowner, and reversed and remanded the case for a finding on damages. 414 F.2d 675. This whole issue now is therefore restricted to the quantum of damages. This matter came on for hearing on that question on June 25, 1970.

## FINDINGS OF FACT

1. The plaintiff, Mr. Alfred M. Massey, is now 43 years of age and has a working life expectancy of 22 years.

2. The accident involved in this lawsuit occurred on September 7, 1965, at which time he was working on a crewboat when he fell and injured his back.

3. He was seen by Dr. Frank McMains, an orthopedic surgeon, first on September 9, 1965, following the accident. At that time Dr. McMains suggested the possibility of a spinal fusion ultimately having to be performed but preferred to continue at that time with conservative treatment.

4. In June of 1967 Dr. McMains recommended that surgery be performed including a spinal fusion. This surgical procedure was, in fact, performed on February 16, 1970. The purpose of the spinal fusion is to stabilize the spine by bypassing the defect and eliminating motion at the point of defect.

5. The plaintiff had, prior to his accident in 1965, a back defect known as Spondylolesthesis, which defect gave him a 10–15% disability. With this disability which existed prior to the accident, while the plaintiff could, and did perform heavy work, he should not have performed that kind of work. People with such a defect in all probability will, in the opinion of Dr. McMains, experience back difficulties sooner or later whether or not they are involved in an accident.

6. However, his present condition was caused by the accident of 1965 which aggravated the pre-existing condition of Spondylolesthesis. Surgery might not have been required had it not been for the accident. The plaintiff now has, and will continue to have, a minimum permanent disability of 25–35%. The plaintiff cannot, at any time in the future, be expected to engage

in heavy manual labor, or to perform work which will involve climbing or other activities strenuous on the back. This bodily disability will permanently prevent him from performing the work of an ironworker.

7. Plaintiff will be totally unable to perform any work of any kind for one year following his operation and will suffer complete loss of income during this period of convalescence. During the first six months following the operation, he will have to wear a back brace.

8. Plaintiff averaged earnings approximately $12,000 per year before the accident. His rate of pay at the time of his injury was $4.20 per hour. The rate of pay of an ironworker such as the plaintiff is now $5.97½ per hour.

9. Defendants are entitled to a credit against the judgment rendered herein of $3500, representing voluntary payments made by them as compensation to the plaintiff following his accident.

10. Plaintiff has incurred medical bills in the total sum of $4,962.29.

11. From the date of the accident to the present time, plaintiff has lost in *past wages* approximately $42,074.59. This is based upon an average earning of $12,000 per year for five years *less* actual wages earned by the plaintiff during that time of $14,425.41 and *less* the sum of $3,500 paid as compensation payments by the defendant during that time.

12. At the time of plaintiff's injury his hourly wage was $4.20. Based upon that hourly wage plaintiff's average earning would be $12,000 per year. But the evidence shows that the wage of an ironworker is now $5.97½ per hour. Based upon this hourly wage, plaintiff would average, in the future, were he still able to work as an ironworker, approximately $15,600 per year, which is the basis upon which future loss of earnings must be based. In 1968 plaintiff did, in fact, earn $10,623, thus showing a loss of income for that year of approximately $5,000. The maximum percentage of disability attributed by Dr. McMains to the accident here involved is 25%. If we apply this percentage to the annual earnings of $15,600, we come up with an annual loss of approximately $4,000. Thus it would seem fair and equitable, for the purpose of determining loss of future wages, to use an estimated annual loss figure of midway between, or the sum of $4,500. This amount, multiplied by a life-expectancy of 22 years, would amount to a gross loss of *future wages* of $99,000. In order to reduce this figure to its present discounted value, it should be reduced by 22% in accordance with the formula approved in Sleeman v. Chesapeake and Ohio Railway Co., 305 F.Supp. 33 (W.D.Mich.1969). Thus the plaintiff's loss of future earnings based upon his expected residual disability, reduced to its present value, is the sum of $77,220. But the evidence further shows that plaintiff will be unable to do *any* work of *any* nature before February 16, 1971, as the result of the surgery performed on his back. Hence to this amount of lost earnings, based upon his permanent *residual* disability, must be added a sum to compensate him for this additional five months, one and one-half week period of *total* disability. For this five months, one and one-half week, plaintiff will lose $6,950 *less* $2,004.81 already taken into consideration in the gross future loss of earnings figure, or a total of $4,945.19. Thus the Court finds, as a fact, that plaintiff has suffered an estimated loss of *future* wages in the total sum of $82,165.19.

13. Plaintiff's total lost wages, past and future, is thus the sum of $124,-239.78.

14. Plaintiff has incurred medical expenses in the sum of $4,962.29 which amount he is entitled to recover.

15. The injuries suffered by the plaintiff have caused him pain and suffering in the past and the uncontradicted evidence indicates that he will continue to suffer some degree of discomfort in the future. The residual dis-

**40**

ability resulting from the accident will also result in some curtailment of physical activities in the future in addition to curtailment of work activities. For this pain, suffering, and curtailment of physical activities, past, present and future, plaintiff is entitled to recover the sum of $25,000.

16. Since there was no evidence to show that plaintiff was entitled to maintenance over and above his regular wages, and since plaintiff's total loss of wages, past and future, has been considered, no separate award for maintenance will be made.

## CONCLUSIONS OF LAW

1. Plaintiff, as a matter of law, is entitled to recover from the defendants in solido the total sum of $154,202.07 with legal interest thereon from date of this judgment until paid.

Judgment will be rendered accordingly.