638 So.2d 477 (1994)
Larry SAMPSELL
v.
B & I WELDING SERVICES AND CONSULTANTS, INC., et al.
No. 93-CA-2456.
Court of Appeal of Louisiana, Fourth Circuit.
June 15, 1994.
Rehearing Denied July 19, 1994.
George J. Nalley, Jr., David A. Parsiola, George J. Nalley, Jr., A Professional Law Corp., New Orleans, for Larry Dean Sampsell.
Russell M. Cornelius, Robert E. Thomas, Cornelius, Sartin & Murphy, New Orleans, for Fidelity & Cas. Co. of N.Y.
Before KLEES, WARD and PLOTKIN, JJ.
WARD, Judge.
Larry Sampsell appeals from a summary judgment dismissing his claims against his former employer, B & I Welding Services and Consultants, Inc., and its insurer, Fidelity Casualty Company of New York. Mr. Sampsell claims Fidelity wrongfully denied him maintenance and cure benefits which he claims were due to him as an injured seaman. He also claims Fidelity wrongfully delayed approval of surgery for his injured back.
The trial court held that Fidelity could offset Sampsell's claims for maintenance with the payments it made to him for worker's compensation. The trial court also denied Sampsell's claim for damages because of the alleged delay in approving surgery.
We reverse. Fidelity cannot offset an injured seaman's right to maintenance and cure by claiming credit for workers' compensation payments. We also find Fidelity's delay of seven months before approval of surgery raises contested issues of fact which means that summary judgment is not appropriate.
On July 26, 1989, while employed as a welder with B & I, and while working on an offshore barge, Sampsell injured his lower back. Fidelity assumed that Sampsell was entitled to workers' compensation as a welder, and promptly began compensation payments. Fidelity also timely authorized the first surgery, a lumbar laminectomy.
On May 4, 1990, Sampsell filed suit against B & I, claiming that he was a seaman within the meaning of the Jones Act and General Maritime Law. Immediately after he filed suit, B & I's insurer, Fidelity examined its records and found that the payments Fidelity had made for worker's compensation *478 exceeded those that would be due to Sampsell for maintenance and cure if he were indeed a seaman. Fidelity then unilaterally credited the workers' compensation payments against payments of maintenance and cure and did not pay maintenance and cure until the credit was exhausted, eleven months later. As a consequence, Sampsell allegedly suffered devastating economic hardship resulting in the loss of his home and many personal possessions, as well as occasioning mental and physical suffering which allegedly delayed recuperation from his injury and treatments.
Sampsell then filed a supplemental petition on November 26, 1991, alleging that Fidelity and B & I arbitrarily and capriciously terminated his seaman's benefits of maintenance and cure. In addition, Sampsell alleges that a second back surgery was necessary, and although it was ultimately approved by Fidelity, he claims the seven month delay before approval was an arbitrary and capricious handling of his claim for cure. Sampsell's Jones Act claims are not part of this appeal, and the questions raised herein relate only to his supplemental petition and the trial court's summary judgment on those issues.
"Appellate courts review summary judgments de novo under the same criteria that govern the district court's consideration of whether summary judgment is appropriate." Schroeder v. Board of Supervisors of Louisiana State University, et al., 591 So.2d 342, 345 (La.1991), rehearing denied, (1992).
Fidelity and B & I argue summary judgment is appropriate because an immediate credit was due to them for the workers' compensation payments, relying on the workers' compensation cases of Ferrand v. D.H.L. Co., 614 So.2d 350, 354 (La.App. 4th Cir. 1993), and Breaux v. Petro-Drive, Inc., 534 So.2d 48 (La.App. 3rd Cir.1988). Both allow an employer to take an immediate credit and to deduct overpayment of workers' compensation benefits to an employee before making further payments. Fidelity and B & I also rely on cases under the Longshoreman and Harbor Workers' Compensation Act to support their position, in particular Stevedoring Services of America, Inc. v. Eggert, 953 F.2d 552 (9th Cir.1992), cert. denied, ___ U.S. ___, 112 S.Ct. 3056, 120 L.Ed.2d 922 (1992), which allows reimbursement of overgenerous payments of claims under the Longshoremen and Harbor Workers' Compensation Act, 33 U.S.C.A. § 914(j).
It is not at all certain, however, that an employer has a right to an immediate credit against an injured employee's future compensation for voluntary overpayment it has made, even under the LHWCA. In considering the Longshoremen and Harbor Workers' Compensation Act, 33 U.S.C.A. § 914(j), the United States Court of Appeals for the Ninth Circuit noted, "Ultimately, this section does not provide an employer with a right of repayment for allegedly overpayment of compensation." Stevedoring Services of America, Inc., 953 F.2d at 556. The Fifth Circuit further clarifies that Congress, in enacting the statute, intended that "an injured worker receive regular compensation, even [if it is] later determined to have been wrongly exacted and [is] not recoverable by the payer, [rather] than that he be left without assistance until all amounts are finally determined." Henry v. Gentry Plumbing & Heating Co., 704 F.2d 863, 865 (5th Cir.1983). In Massey v. Williams-McWilliams Inc., 414 F.2d 675, 679-80 (5th Cir.1969), cert. den., 396 U.S. 1037, 90 S.Ct. 682, 24 L.Ed.2d 681 (1990), on remand, 317 F.Supp. 37 (1970), the Fifth Circuit held that even where an employer was entitled to a credit for repayment of benefits mistakenly made to a seaman under the LHWCA, when it was actually liable to him under the Jones Act, the credit could not come as repayment, but would rather have to be taken against damage items which were ultimately awarded the seaman and reasonably related to the LHWCAcompensated items of loss. Also, 33 U.S.C.A. § 922, allows an employer to recover overpayment of compensation "pursuant to a compensation order under the LHWCA." Stevedoring, 953 F.2d at 557. The case before us involves no such "order." In sum, Fidelity's reliance on decisions applicable to the LHWCA as analogous is not persuasive authority to justify taking an immediate set-off.
Most importantly, neither the Louisiana Worker's Compensation Act nor the *479 LHWCA Act apply to this case. Fidelity and B & I argue that there can be no reason to distinguish compensation payment from maintenance and cure, and that it is irrational to permit a credit in one instance but not in another "simply because the injured worker might have a connection to a vessel and be labeled [a] `seaman.'" We disagree. It is precisely for this reason that such a credit against an injured seaman's right to maintenance cannot be allowed.
There is a marked difference between "seaman" and other workers, and between maintenance and cure and other compensation, as the following cases show.
The seaman's right to maintenance and cure for illness or injury occurring while he is in the service of the ship is often analogized to workmen's compensation.... Th[is] analogy ... is on the whole misleading. The theory of compensation was to substitute for a tort action based on negligence the remedy of a compensatory award, determined by an administrative agency, without regard to the employer's fault or negligence. Since the compensation statutes made the award the workman's exclusive remedy against his employer, there was a mutual give and take: the workman gave up the chance of a large verdict from a sympathetic jury but received the certainty of some compensation; the employer gave up the chance of escaping liability altogether and agreed to pay something whenever any of his employees was injured in the course of his employment.
The shipowner's liability for maintenance and cure resembles that of an employer subject to a Workmen's Compensation Act only in that it is a liability without fault which is based on the employment relationship. The shipowner's liability is not restricted to injury or illness `arising out of' or causally related to the seaman's shipboard duties; ... the shipowner is liable for any injury which occurs or any illness which manifests itself while the seaman is under articles. Not only is the shipowner's liability more extensive than liability under any Workmen's Compensation Act, but the right to maintenance and cure is not the seaman's exclusive remedy against his employer: he may also recover damages for negligence under the Jones Act or for breach of the duty to provide a seaworthy ship. Grant Gilmore and Charles L. Black, Jr., The Law of Admiralty, § 6-6, at 281-2.
The seaman's remedy of maintenance and cure, as opposed to the non-seaman's remedy of worker's compensation, has been accurately characterized as "a greater right, a more ancient right and the most sacred right ever afforded men of labor." Sims v. Marine Catering Service, Inc., 217 F.Supp. 511, 517 (E.D.La.1963). A shipowner's or employer's duty to provide its injured seamen maintenance and cure is "[a]mong the most pervasive incidents of the responsibility anciently imposed upon a shipowner ...," Aguilar v. Standard Oil Co., 318 U.S. 724, 730, 63 S.Ct. 930, 933, 87 L.Ed. 1107 (1943). Traditionally, the scope of maintenance and cure has been, "to provide a seaman with food and lodging when he becomes sick or injured in the ship's service; ... until he reaches maximum medical recovery [maximum cure]." Vaughan v. Atkinson, 369 U.S. 527, 531, 82 S.Ct. 997, 1000, 8 L.Ed.2d 88 reh. den., 370 U.S. 965, 82 S.Ct. 1578, 8 L.Ed.2d 834 (1962); Davis v. Odeco, Inc., 18 F.3d 1237, 1245, 1246 (5th Cir.1994), rehearing denied. "[Maintenance and cure] was intended to assure [the injured seaman] three meals a day and a bed in which to sleep during his treatment and convalescence." Manchack v. S/S Overseas Progress, 524 F.2d 918, 919 (5th Cir.1975) quoting McCarthy v. American Eastern Corporation, 175 F.2d 727 (3rd Cir.1949), cert. den., 338 U.S. 911, 70 S.Ct. 349, 94 L.Ed. 561 (1950).
We conclude that maintenance and cure benefits are qualitatively different from workers' compensation, granted for the purpose of providing food and shelter to injured seaman while he recovers from injuries. They are not substitutes for wages while injured. Remedies and procedures under state workers' compensation laws cannot be analogized to maintenance and cure derived from maritime law. Given the nature of seamen, Courts in admiralty liberally interpret this duty to pay maintenance "for the benefit and protection of the seamen who are *480 its wards." Hudspeth v. Atlantic & Gulf Stevedores, Inc., 266 F.Supp. 937, 941 (E.D.La.1967); Calmar Steamship Corp. v. Taylor, 303 U.S. 525, 58 S.Ct. 651, 82 L.Ed. 993 (1938), reh. den., 59 S.Ct. 56 (1938). Fidelity cannot use prior workers compensation payments to evade a duty to pay maintenance and cure during Sampsell's recovery. The trial court erred by holding Fidelity could take an immediate credit for worker's compensation payments and withhold maintenance and cure.
Nevertheless this does not mean that Sampsell himself is entitled to a summary judgment, as it appears he argues. There remain unresolved issues of fact as to whether Fidelity and B & I are liable for compensatory or punitive damages. The Fifth Circuit in Harper v. Zapata Off-Shore Co., 741 F.2d 87, 88 (5th Cir.1984) noted that "punitive damages for the willful and arbitrary refusal to pay maintenance are available under general maritime law." There may be varying degrees of damages that may be awarded a seaman for his employer's breach of the maintenance and cure duty:
If the shipowner, in failing to pay maintenance and cure, has not only been unreasonable but has been more egregiously at fault he will be liable for punitive damages and attorney's fees.... [T]here is an escalating scale of liability: a shipowner who... has been reasonable in denying liability, may be held liable only for the amount of maintenance and cure. If the shipowner has refused [payment] without a reasonable defense, he becomes liable in addition for compensatory damages. If the owner not only lacks a reasonable defense but has exhibited callousness and indifference to the seaman's plight, he becomes liable for punitive damages and attorney's fees as well. Morales v. Garijak, Inc., 829 F.2d 1355, 1358 (5th Cir.1987).
Moreover, ["i]f an unreasonable failure to provide maintenance and cure aggravates the seaman's condition, his employer is liable not only for the increased medical expenses and maintenance that may become necessary, but also for the full tort damages that result." Parker v. Texaco, Inc., 549 F.Supp. 71, 77 (E.D.La.1982); Vaughan v. Atkinson, supra; Cortes v. Baltimore Insular Line, 287 U.S. 367, 53 S.Ct. 173, 77 L.Ed. 368 (1932); Picou v. American Offshore Fleet, Inc., 576 F.2d 585 (5th Cir.1978).
Thus Fidelity and B & I's liability depends on a factual question of whether Fidelity was reasonable or unreasonable, or willfully callous, arbitrary, and indifferent.
On the issue of whether Fidelity negligently delayed approval of Sampsell's request for a second surgery, there are several issues of material fact in dispute, including whether or not a seven month delay in approving a second surgery was excessive and constituted an arbitrary and capricious handling of Mr. Sampsell's claim. Also in question is whether or not the delay occasioned a deterioration in Mr. Sampsell's already impaired physical condition. At the very least, determinations in favor of the moving party were premature. The evidence supporting the summary judgment cannot be said to clearly support the trial court's conclusion. Rather Fidelity and B & I have failed to meet the threshold requirements of this motion by clearly showing an absence of any genuine issue of material fact and that judgment as a matter of law should be theirs.

REVERSED AND REMANDED.