698 So.2d 1022 (1997)
Winston MADDOX, Plaintiff-Appellant/Appellee,
v.
OMNI DRILLING CORPORATION, Defendant-Appellee/Appellant.
No. 96-01673.
Court of Appeal of Louisiana, Third Circuit.
August 6, 1997.
Rehearing Denied September 30, 1997.
*1024 George Arthur Flournoy, Alexandria, J. B. Jones, Jr., Cameron, for Winston Maddox.
David Keith Johnson, Baton Rouge, Ped C. Kay, III, Lafayette, for Omni Drilling Corporation.
Before YELVERTON, COOKS and GREMILLION, JJ.
GREMILLION, Judge.
This is an appeal from the trial court's judgment finding that the plaintiff, Winston Maddox, was a seaman, but that the defendant, Omni Drilling Corporation, was not liable with respect to any Jones Act negligence and/or unseaworthiness claims.
Maddox appeals the jury's finding concerning Omni's liability, while Omni appeals the trial court's determination that Maddox was a seaman. Omni also appeals the trial court's post-judgment ruling concerning maintenance and cure. For the following reasons, we affirm.

FACTS
Maddox alleges that while employed by Omni, he was injured on September 23, 1993, when he slipped on the bow of an air boat, the BROWN HORNET, and injured his back. He alleges that he was assigned as a support boat driver of a vessel in navigation in a navigable waterway in the Sabine National Wildlife Refuge in Calcasieu Parish. As a support boat driver, he was responsible for picking up and handing ten-foot joints of casing to the drill helper while the actual drilling was being done and then stowing each joint casing when the drilling was completed. This work was done on the bow of the air boat. Maddox contends that he slipped on the bow of the boat while the drill helper was handing him a casing joint. It is his assertion that the accident occurred because the bow lacked an adequate non-slip surface.

OMNI'S ASSIGNMENTS OF ERROR
1. The jury committed manifest error in finding that Maddox was a seaman.
2. The trial court erred in finding that Maddox did not waive his claim for maintenance and cure.

MADDOX'S ASSIGNMENTS OF ERROR
1. The trial court committed prejudicial error by allowing a decisive defense witness to testify for the defendant who had not been listed on the defendant's witness list, by refusing to admit photographs of a similar actual work surface, and by excluding crucial expert witness testimony on a critical issue.
2. The jury's findings of no Jones Act Negligence and no unseaworthiness are manifestly erroneous.
3. The trial court committed error by allowing a credit of workers' compensation toward the payment of maintenance.
4. The trial court abused its discretion in not granting plaintiff's motions for post-trial relief.

STANDARD OF REVIEW
Louisiana courts of appeal are to apply the manifest error-clearly wrong standard of fact review in general maritime and Jones Act cases. Milstead v. Diamond M Offshore, Inc., 95-2446 (La.7/2/96); 676 So.2d 89. A court of appeal may not set aside a trial court's or a jury's finding of fact in absence of manifest error or unless it is clearly wrong. Rosell v. ESCO, 549 So.2d 840 (La.1989); Stobart v. State, Through DOTD, 617 So.2d 880 (La.1993). The appellate court must determine not whether the trier of fact was right or wrong, but whether the fact finder's conclusion was a reasonable one, after reviewing the record in its entirety. Mart v. Hill, 505 So.2d 1120 (La.1987); Rosell, 549 So.2d 840; Stobart, 617 So.2d 880. Even though an appellate court may feel its own evaluations and inferences are more reasonable than the fact finder's, reasonable evaluations of credibility and reasonable inferences *1025 of fact should not be disturbed upon review where conflict exists in the testimony. Arceneaux v. Domingue, 365 So.2d 1330 (La. 1978).

SEAMAN STATUS
In its first assignment of error, Omni argues that the jury committed manifest error by finding that Maddox was a seaman because the air boat was not a vessel in navigation at the time of his injuries and that Maddox failed to prove that he had a connection to a vessel in navigation that was substantial in terms of duration and nature. In order to recover damages from an employer under either general maritime law or the Jones Act, the plaintiff must establish "seaman status."
Omni contends that the air boat was not a vessel in navigation because the area in which Maddox was hurt, the Refuge, was neither navigable nor subject to commerce. To support their position, Omni points to the testimony of Arnold Neidecker, the Refuge manager, and Craig Guillory, Maddox's witness on the issue of navigability and an agent of the Department of Wildlife and Fisheries, that the Refuge was not capable of supporting barge or tug boat traffic. By this testimony, Omni hopes to bolster its claim that "[t]he navigability test requires that the body of water (in question) must be susceptible to commerce in the traditional sense, i.e. business of shipping." However, the jury also heard testimony that could certainly form a reasonable basis for a finding of navigability. For instance, there was testimony that the waters of the Refuge are affected by the ebb and flow of the tide and that commercial activity, such as fishing, shrimping, and oil and gas exploration, have taken place in the Refuge for years. We find it is also significant that Maddox was injured while aboard an air boat.
The jury was instructed by the trial judge that "open water may or may not be navigable depending upon its depth and the presence or absences of obstacles to navigation" and that "navigable waters are any waters which are navigable in fact." The jury, armed with these instructions and the testimony and evidence introduced at trial, made the factual determination that the area of the Refuge in which Maddox was working was navigable. The jury was in the best position to evaluate the testimony and evidence presented at trial. Furthermore, there is jurisprudence that the scope of seaman status is not limited to the business of shipping. For instance, in McFarland v. Justiss Oil Company, Inc., 526 So.2d 1206 (La.App. 3 Cir. 1988), and Cormier v. Cliff's Drilling Company, 93-1260 (La.App. 3 Cir. 5/4/94); 640 So.2d 552, this court found workers on drilling barges to be seamen. See also Offshore Company v. Robison, 266 F.2d 769 (5th Cir. 1959). After reviewing the law and the record, we find that the jury was neither manifestly erroneous nor clearly wrong in making this determination.
Concerning the issue of Maddox's connection to a vessel, the trial judge gave the following instructions to the jury:
A seaman does not need to be assigned to one specific vessel. A worker may gain seaman status by permanent assignment to a fleet of vessels in navigation or by performing a substantial part of his work on the vessels. The word fleet in this context means an identifiable group of vessels acting together under one control. In order to be deemed a seaman under these circumstances, a worker must have more that just a transitory connection with a vessel or fleet of vessels. For instance, a worker carried as a passenger on a vessel is not a member of the crew. The same is true of longshoremen and repairmen who go onto vessels at random. These are not considered seamen because of the intermittent or temporary nature of their contact with the vessel or fleet of vessels.
In order to prove substantial work equivalent to permanent assignment, it must be shown that the worker performed a significant part of his work aboard the vessel with at least some degree of regularity and continuity. If the employee's regularly assigned duties require him to divide his time between vessel and land, his status as a crew member is determined in the context of his entire employment with the employer.

*1026 Under the terms of the Jones Act, the right of the seaman to recover for his injuries does not depend on the place where the injury occurred, but on the nature of the employee's service and his relationship to the operation of a vessel in navigation. However, there is no requirement that the vessel be in navigation or on navigable waters when the actual injury occurs.
We find that the learned trial judge's jury instructions were accurate statements of the law.
The jury heard the testimony of Maddox as well as the testimony of Omni's witnesses. Maddox testified that he worked in a marsh buggy crew when he first began working for Omni. However, on September 9, 1993, his assignment changed, and he began working in a drilling crew using air boats. He began this new assignment as a helper on a drill boat before assuming the duties as a support boat driver on September 21, 1993. Obviously the jury found Maddox's testimony more credible and relied on it in reaching their decision. After reviewing the record and the jury instructions given, we cannot say that the jury was unreasonable in finding that Maddox had the requisite connection to a vessel in navigation. As such, we find Omni's assignment of error to be without merit.

WAIVER OF MAINTENANCE AND CURE
In its second assignment of error, Omni asserts that the trial court improperly denied its Peremptory Exception of Waiver and/or Res Judicata; alternatively, Motion for Summary Judgment concerning whether Maddox waived his claim for maintenance and cure. After the trial, Omni submitted a judgment to the trial court which was signed on May 24, 1996, which dismissed all claims with prejudice. Maddox filed a Motion for Judgment Notwithstanding Verdict, or in the Alternative, for a Partial New Trial for Argument Only. One of the complaints was the failure to award maintenance and cure despite the jury finding that Maddox was a seaman. Omni claimed that Maddox waived this claim because the issue was not presented to the jury. However, during the course of this litigation, a stipulation was reached regarding the amount of maintenance to be paid although no stipulation was reached regarding the obligation to pay maintenance and cure. On July 17, 1996, the trial court held a hearing on Maddox's motion; ruled that the issue of maintenance and cure would be taken up a hearing at a later date; and stated:
Well, I'm going to handle it like this. That was an issue that is to be tried at another time. Because he thought you had an understanding, your laying in the gap for him, knowing that you didn't agree to everything, simply results in we're going to try the matter at another time.
Subsequent to this ruling by the trial court and prior to the hearing on Maddox's motion for maintenance and cure, Omni sought supervisory writs from this court seeking to prevent the trial court from holding the hearing on the issue of maintenance and cure. Omni's writ was denied by this court on August 22, 1996, docket number W96-1126. Therefore, we have already decided this issue, and under the law of the case doctrine, we decline to address it once again on appeal. Guilbeaux v. Times of Acadiana, Inc., 94-1270 (La.App. 3 Cir. 8/9/95); 661 So.2d 1027, writ denied, 95-2942 (La.3/29/96); 670 So.2d 1238.

EVIDENTIARY RULINGS
Maddox's first assignment of error concerns adverse evidentiary rulings made by the trial judge during the course of the trial.

Photographs
Maddox sought to introduce photographs of the bow of a similar air boat. Omni filed a motion to quash claiming that because the photographs were not of the boat that Maddox operated, they lacked probative value and would be prejudicial. The trial judge agreed, and Maddox now asserts that the trial court erred in so ruling.
La.Code Evid. art. 401 provides:
"Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable *1027 or less probable than it would be without the evidence.
La.Code Evid. art. 403 provides:
Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or waste of time.
The trial judge is accorded vast discretion concerning the admission of evidence, and his decision will not be reversed on appeal absent an abuse of that discretion. Lemoine v. Hessmer Nursing Home, 94-836 (La.App. 3 Cir. 3/1/95); 651 So.2d 444. After a review of the record and based on our findings herein, we find that while the photographs of a similar air boat may be relevant, clearly the photographs which show the lack of a non-skid surface on a similar air boat would be so unfairly prejudicial and misleading as to outweigh their probative value. Accordingly, we find that the trial judge did not abuse his vast discretion in excluding the photographs.

Expert Witness Testimony
Maddox asserts that the trial judge erred in excluding the testimony of Ed Robert, Maddox's expert witness in the areas of marine safety and the application and maintenance of non-skid surfaces. Maddox sought to elicit testimony from him concerning the wear the bow of the boat would have experienced during the course of the drilling job. Omni objected to this line of testimony as beyond the scope of Robert's knowledge or expertise. The trial judge sustained the objection, stating that because Robert had neither inspected nor seen photographs of the boat, he could not speculate as to what would have been the condition of the bow of the support boat. The trial judge is afforded great discretion in determining whether expert testimony is admissible, and his decision should not be disturbed by the appellate court unless manifestly erroneous. Budget Rent-A-Car of New Orleans v. Gradnigo, 611 So.2d 147 (La.App. 3 Cir.1992). In making this determination, the trial judge must determine whether the trier of fact will receive appreciable help from the testimony of the expert witness. Daubert v. Merrell Dow Pharmaceuticals, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993); State v. Foret, 628 So.2d 1116 (La.1993).
La.Code Evid. art. 702, like its Federal counterpart, states that expert testimony must be based on "scientific, technical, or other specialized knowledge." Even then, such "testimony must rise to a threshold level of reliability in order to be admissible." State v. Foret, 93-0246 (La.11/30/93); 628 So.2d 1116, 1123 (adopting Daubert). To be reliable, such testimony requires more than "subjective belief or unsupported speculation,"Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 589, 113 S.Ct. 2786, 2795, 125 L.Ed.2d 469 (1993)....
Rowe v. State Farm Mut. Auto. Ins. Co., 95-669, p. 17 (La.App. 3 Cir. 3/6/96); 670 So.2d 718, 729, writ denied, 96-0824 (La.5/17/96); 673 So.2d 611.
We do not find that the trial judge was manifestly erroneous in not permitting this line of testimony. Robert testified that he had never seen the boat and the only knowledge he had of the boat was gleaned from the testimony presented in court. As such, we find that the trial court was reasonable in determining that Robert lacked the requisite knowledge of the boat's condition necessary to render his testimony reliable.

Shannon Michot's Testimony
Maddox urges that the trial judge's decision permitting Shannon Michot to testify for Omni was clearly wrong. At issue is whether Michot was a surprise witness and if this surprise unfairly prejudiced Maddox's case. The trial judge permitted Michot to testify because he was listed on Maddox's March 22, 1996 witness list and Omni's pre-trial witness list contained the catch-all phrase "any witness listed or called by any other party." After a review of the evidence, we find that the trial court erred by permitting Michot to testify.
We are particularly disturbed by the April 2, 1996 letter from Maddox's counsel to Omni's counsel wherein he specifically requests "if you intend to call any other Omni *1028 drilling personnel, past or present, please make them available on April 8, as I want to depose anybody associated with Omni whom you intend to call as a witness." Significantly, Omni did not make Michot available, implying that they would not call him as a witness. We note that the trial judge determined Michot was covered by the catch-all phrase "any witness listed or called by any other party." Although these generic phrases are widely used in practice, in this case, we find its use very misleading. Maddox's witness list containing Michot as a witness was dated March 22, 1996, some two and one-half weeks before Omni indicated it would not call Michot as a witness. Omni was well aware that Maddox wanted to depose all of the Omni employees who were to be called as witnesses. There is no reasonable explanation as to why he was not listed on Omni's witness list. In overruling Maddox's objection, the trial judge rationalized that one of the explanations for using the generic specification on the witness list is so the other party does not have to waste its time listing names on the other parties' list. However, three of the witnesses listed by name on Maddox's witness list were listed by name on Omni's "May Call" witness list. Michot's name, however, was conspicuous by its absence.
Maddox claims that Michot's testimony was damaging to his case owing primarily to the element of surprise and the fact that it greatly impacted the determination of whether the BROWN HORNET was seaworthy. The unseaworthiness claim was based on the contention that Maddox slipped on the bow of the vessel because the anti-skid material had worn off. Michot testified that prior to the BROWN HORNET being sent to the Refuge on August 23, 1993, he spent two to three days applying a new anti-skid coat to the bow in a manner similar to the procedure outlined in the testimony of Robert, Maddox's expert on the application and maintenance of non-skid surfaces. Maddox's counsel discovered after trial, too late, that there was impeachment information available. Thus, he contends that had he been properly informed of Michot's intended use as a witness, he would have deposed him and been prepared to impeach him. For instance, Omni's drill reports, which list the workers, the hours worked, and the work performed, suggest that Michot could not have been in the shop painting the anti-slip abrasive material on the boat during the period he claimed. These documents show instead that he was in the shop for only six hours on August 18, 1993. Accordingly, we hold that the trial court committed error in allowing Michot to testify.

SEAWORTHINESS
In his second assignment of error, Maddox asserts that the jury's finding concerning seaworthiness was manifestly erroneous because Michot's testimony was so damaging that it tainted the jury's decision. Although we held that the trial court committed error by admitting Michot's testimony, we cannot say that the exclusion of his testimony would have led to a contrary decision by the jury.
Michot was not the only witness in the trial to testify that the boat had been completely refurbished, including the application of non-skid paint, in August 1993. Indeed, the fact that in August, when the job began, the boat was in excellent condition, including a non-skid surface on the bow, was established by every witness who testified on the subject and contradicted by none. Maddox and his two supporting witnesses, Carl Poppy and Jerry Ducote, testified only as to the condition of the boat on the day of the accident, September 23, 1993. Another witness, Terrell Koch, testified that when the job began in mid-August the boat was in as good a condition as it had ever been, with a new engine and a new propeller; all repairs were made to the prop guard, and a new paint job was done on the entire boat, including the deck. It had just been freshly painted with the paint sand, he said. David Wayne Miller, a driller for OMNI who was on this job from the beginning in August until the it ended on October 15, 1993, testified that at the beginning of that job the BROWN HORNET had never looked better. He stated that it was completely refurbished with all new anti-skid, sand paint. Even if Michot had not testified at all, there was undisputed evidence in the record that the *1029 boat, and particularly the bow, with its non-skid paint, was in excellent condition a month before the accident. Therefore, had Maddox been able to demonstrate on cross-examination that Michot did not spend two or three days refurbishing the deck of the BROWN HORNET, there was significant other evidence in the record that when the job began in August, the deck had been freshly painted with non-skid material and was in excellent condition.
Of course, the critical inquiry was not the condition of the boat when the job began, but the condition of the boat on September 23, 1993 when the accident happened. Michot gave no testimony at all about the condition of the boat on September 23, but there is plenty of evidence in the record on the subject. Maddox himself said that the non-skid material on the bow was "used real bad." Poppy, his best corroborating witness, said that all the bow had was just small tape strips and it did not have any non-skid paint and sand on it. Ducote, another witness for Maddox, testified that he believed that the non-skid paint gradually wore off as the job went on because the boat was out for a long time. He said that if they had a roll of non-skid tape on that boat, they would have applied it. However, Ducote testified that they did not have any non-skid tape. Therefore, there was internal contradiction among Maddox's own witnesses on the subject of whether there was non-skid tape on the bow.
OMNI's witness, Terrell Koch, also testified that the boats were not supplied with non-skid tape for that particular job. Faced with this evidence, we cannot say that either the exclusion of Michot's testimony or a vigorous, knowledgeable, and effective cross-examination, would have made any difference in the jury's verdict concerning the culpability of OMNI.
We make this finding even in the face of allegations that OMNI doctored evidence. As Maddox points out, the bottom half of the Immediate Supervisor's Accident Investigation Report was scissored off, and no Omni witness was able to give a satisfactory explanation of why the report was deliberately truncated. Maddox claims that had the report not been altered, it would have shown that the reason he slipped was the lack of an anti-skid surface on the BROWN HORNET. Obviously, the jury took this testimony into account and decided that Maddox did not prove that the condition of the boat was a cause of his accident. Mindful that credibility determinations by the trier of fact are subject to the strictest deference, we cannot find that this determination was manifestly erroneous. Rosell, 549 So.2d 840. Therefore, we affirm the jury's decision on this issue.

CREDIT FOR WORKERS' COMPENSATION PAYMENTS
In its Peremptory Exception of Waiver and/or Res Judicata; Alternatively, Motion for Summary Judgment, Omni asserted that it is entitled to an offset for the amounts paid by its workers' compensation carrier if the trial court found a trial on the issue of maintenance and cure should be held. The trial court agreed with Omni and allowed a credit. In his third assignment of error, Maddox urges that in light of Sampsell v. B & I Welding Serv. & Cons., 93-2456 (La.App. 4 Cir. 6/15/94); 638 So.2d 477, writ denied, 94-2175 (La.11/11/94); 644 So.2d 397, cert denied, 514 U.S. 1063, 115 S.Ct. 1692, 131 L.Ed.2d 556 (1995), we should reverse the trial court's ruling on this issue.
In Sampsell, the plaintiff began receiving workers' compensation benefits before he filed suit alleging that he was a seaman and, thus, entitled to maintenance and cure. The employer's insurer discovered that the amount it would have paid for maintenance and cure would have been less than it had already paid in compensation benefits and took an immediate credit by suspending all payments to the plaintiff for approximately eleven months. In response to this action, the plaintiff filed a supplemental claim, alleging that the employer was arbitrary and capricious in its decision to suspend payments. The trial court granted a motion for summary judgment dismissing this claim, and the plaintiff appealed that decision. The Fourth Circuit Court of Appeal reversed, stating:

*1030 We conclude that maintenance and cure benefits are qualitatively different from workers' compensation, granted for the purpose of providing food and shelter to injured seaman while he recovers from injuries. They are not substitutes for wages while injured. Remedies and procedures under state workers' compensation laws cannot be analogized to maintenance and cure derived from maritime law.... Fidelity cannot use prior workers [sic] compensation payments to evade a duty to pay maintenance and cure during Sampsell's recovery. The trial court erred by holding Fidelity could take an immediate credit for worker's compensation payments and withhold maintenance and cure.
Sampsell, 638 So.2d at 479-480 (citations omitted).
During the hearing on this issue in the case sub judice, the trial court considered the Sampsell opinion and stated the following:
Gentlemen, I feel like this Sampsell case is based upon the court's concern that maintenance not be interrupted when it's payable; and, in fact, it says very much the same thing toward the end of the opinion: "Fidelity cannot use prior workman's compensation payments to evade a duty to pay maintenance and cure during Sampsell's recovery." That's not what we have here. In this case, during the pertinent period of time when maintenance was due, this defendant was making a weekly workman's compensation payment exceeding the M and C obligation. Now, as a result of the jury decision on seaman status, we realize that it owed no compensation. Yet, every week that maintenance to this seaman was due, the defendant was paying him a sum equal to or greater than that obligation. Yes, it was found later that the basis of the obligation was different, but the defendant will still get a credit for each week that it met or exceeded its maintenance obligation.
Maddox claims that he is owed $5,775.00 in maintenance. The evidence presented by Omni illustrates that it paid Maddox $4.994.64 in weekly workers' compensation benefits from September 26, 1993 to March 10, 1994. We agree with the trial court that the scenario here is quite different from the one presented in Sampsell. Here, during the time Maddox would have been receiving a seaman's maintenance, he was receiving compensation benefits. Certainly, Maddox was not harmed in any way by this, and it would be inequitable to allow him double recovery under both admiralty and workers' compensation. McFarland, 526 So.2d 1206. As such, we find this assignment of error lacks merit.

COSTS OF THE TRIAL
In the judgment, the trial court assessed all costs to Maddox. Although he did not assign this as error, we, under our general authority to render any judgment which is just and proper on the record find that the trial court erred in assessing the costs of the trial to Maddox. La.Code. Civ.P. art 2164. Generally, the party cast in judgment should pay costs. La.Code. Civ.P. art. 1920; Hawthorne v. Hawthorne, 96-89 (La. App. 3 Cir. 5/22/96); 676 So.2d 619, writ denied, 96-1650 (La.10/25/96); 681 So.2d 365. In the case sub judice, Maddox prevailed on the issue of seaman status entitling him to maintenance, and OMNI prevailed only on the issues of Jones Act negligence and the unseaworthiness of the BROWN HORNET. The bulk of the testimony concerned the issues surrounding seaman status. Therefore, we find that the costs of the trial are taxed two-thirds to OMNI and one-third to Maddox.

POST-TRIAL RELIEF
In his final assignment of error, Maddox contends the trial court abused its discretion in not granting his Motion for Judgment Notwithstanding the Verdict, and in the Alternative, Motion for New Trial. Because of our rulings on the previous assignments of error, this assignment is rendered moot.

CONCLUSION
For the reasons set forth above, the judgment of the trial court is amended to assess two-thirds of the cost of the trial court proceedings to OMNI with the remaining one-third assessed to Maddox and, as amended, *1031 is affirmed. All costs of this appeal are assessed to Maddox.
AFFIRMED AS AMENDED.