STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

CA 04-1041


GINGER MCINTOSH, INDIVIDUALLY, ET AL.

VERSUS

WAYNE F. MCELVEEN, SHERIFF, ET AL.


* * * * * * * * * *


APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 98-5270
HONORABLE ALCIDE JOSEPH GRAY, DISTRICT JUDGE

**********


BILLY HOWARD EZELL
JUDGE

**********


Court composed of Ulysses Gene Thibodeaux, Chief Judge, Billy Howard Ezell, and James T. Genovese, Judges.

**AFFIRMED.**

**Glen D. Vamvoras**
**Michael Schwartzberg**
**Vamvoras & Schwartzberg**
**1111 Ryan St.**
**Lake Charles, LA 70601**
**(337) 433-1621**
**Counsel for: Secondary Plaintiff/Appellant**
**Ginger McIntosh, Individually**


**L. Katherine A. Theunissen**
**Mahtook & Lafleur**
**P. O. Box 3089**
**Lafayette, LA 70502**
**(337) 266-2189**
**Counsel for: Defendant/Appellant**
**Coregis Insurance Company**

**David B. Green**
**Woodley, Williams Law Firm, L.L.C.**
**P. O. Box 3731**
**Lake Charles, LA 70602-3731**
**(337) 433-6328**
**Counsel for: Defendant/Appellee**
**Wayne F. McElveen, Sheriff**

**EZELL, JUDGE**.

This appeal arises out of the shooting death of Deputy Bill McIntosh. Deputy McIntosh was killed by Woody Hamilton while off-duty, when he answered a citizen's call for help. Deputy McIntosh's widow and children sued the Calcasieu Parish Sheriff's Office (CPSO) and its insurer, Coregis Insurance Company, alleging negligence in failing to warn him of shots fired within his known location. The CPSO and Coregis appeal a judgment in favor of Deputy McIntosh's family, finding that the CPSO's negligence contributed to his death. The family also appeals, claiming the trial court erred in comparing the fault of the intentional tortfeasor, Woody Hamilton, to that of the CPSO. For the following reasons, we affirm the decision of the trial court.

## FACTS

On October 1, 1997, Rhonda Hamilton and her boyfriend, Michael Trahan, were in bed at her home in Moss Bluff, Louisiana. Around 9:30 p.m., Rhonda's ex-husband, Woody Hamilton, began banging on the door of the home. When Mrs. Hamilton cracked open the door to see who it was, Mr. Hamilton forced his way into the house. Mr. Hamilton proceeded to beat Mr. Trahan, forcibly throwing him out of the house. Mr. Trahan ran to his truck to go get help. As he pulled away from Mrs. Hamilton's house, he asked her neighbor, John Maggio, to call the police. When Mr. Maggio indicated that he did not want to get involved in a domestic dispute, Mr. Trahan drove off to get help. As he was driving off, Mr. Trahan saw Mr. Hamilton hit Mrs. Hamilton in her face, then drag her into the house.

Mr. Trahan drove to the Five Star convenience store, where he saw Deputy McIntosh. He told Deputy McIntosh that his girlfriend's ex-husband was beating her and asked for assistance. Deputy McIntosh, who was off-duty at the time,

immediately offered to help.

Meanwhile, at Mrs. Hamilton's house, Mr. Maggio saw Mr. Hamilton drag Mrs. Hamilton, apparently unconscious, out of the house towards his motorcycle. Once he reached the motorcycle, Mr. Hamilton pulled a gun from his saddlebag. Mr. Maggio then called 911.

At 9:38 and 38 seconds, Mr. Maggio told Deputy Kathy Beverly Jackson, the call-taker at the CPSO, that his neighbor was getting shot. At 9:38 and 54 seconds, Deputy Jackson told Deputy Theresa Patrick, the dispatcher for the area, that shots had been fired, stating "1280 Sistrunk Road, 34-Sam.[1]" Deputy Patrick took no action, saying nothing of the shooting over the radio. At 9:39 and 25 seconds, Deputy McIntosh called in for the first time, telling Deputy Patrick that he was en route to a burglary and theft call involving an ex-husband beating a woman. At that time, Deputy McIntosh was following Mr. Trahan because he did not know the address of the house.

At 9:39 and 55 seconds, Deputy McIntosh advised Deputy Patrick that he was turning on Becky Road, off of North Perkins Ferry Road. At 9:40 and 20 seconds, Deputy McIntosh stated to Deputy Patrick that he was on Sistrunk Road and requested back up, still unaware that shots had been reported fired on that same street. Deputy Patrick acknowledged Deputy McIntosh's location and called for back-up. At 9:41 and 10 seconds, Deputy McIntosh began to give Deputy Patrick specific directions to his location to relay to his back-up, again repeating his location on Sistrunk Road, saying the back-up units would see his lights. The directions took 28 seconds to complete, ending at 9:41 and 38 seconds. Again, Deputy Patrick did not mention the reports of the 34-Sam. At 9:41 and 40 seconds, Mr. Maggio told Deputy

---

[1] 34-Sam is the police code for a shooting in progress.

Jackson that a CPSO unit had arrived on the scene. At 9:42 and 13 seconds, three minutes and nineteen seconds after Deputy Patrick was told of the 34-Sam, and one minute and fifty-three seconds after Deputy McIntosh relayed his location on Sistrunk Road to Deputy Patrick, Mr. Maggio reported another shot. That shot killed Deputy McIntosh, who had never been warned of shots being fired in his vicinity. Woody Hamilton was subsequently arrested and is currently serving two life sentences for the murders of Rhonda Hamilton and Deputy McIntosh.

Ginger McIntosh, Deputy McIntosh's widow, and his children, Gregory, Matthew, and Christopher, filed this suit against the CPSO and Coregis, claiming that the CPSO was negligent in failing to warn Deputy McIntosh of shots fired in his area. After a jury trial, the Plaintiffs were awarded $528,005 in economic loss, $185,000 to each of the surviving children, and $50,000 to Mrs. McIntosh. The jury apportioned 60% fault to Mr. Hamilton, 36% fault to the CPSO, and 4% fault to Deputy McIntosh. Coregis appeals, asserting seven assignments of error. The CPSO also appeals, however, disagreeing with Coregis on two issues relating to insurance coverage. Finally, the Plaintiffs appeal, claiming that the fault of Mr. Hamilton should not have been considered.

**COREGIS' ASSIGNMENTS OF ERROR**

As their first assignment of error, Coregis claims that the trial court erred in granting summary judgment in favor of the Plaintiffs on the issue of insurance coverage under the CPSO policy. The CPSO disagrees with their insurer on this issue, as do we.

In *Independent Fire Ins. Co. v. Sunbeam Corp.*, 99-2181, 99-2257, p. 7 (La. 2/29/00), 755 So.2d 226, 230-31 (alteration in original), the Louisiana Supreme Court discussed the standard of review of a summary judgment as follows:

3

Our review of a grant or denial of a motion for summary judgment is de novo. *Schroeder v. Board of Sup'rs of Louisiana State University*, 591 So.2d 342 (La.1991). A motion for summary judgment will be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law." La. C.C.P. art. 966(B). This article was amended in 1996 to provide that "summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action. . . . The procedure is favored and shall be construed to accomplish these ends." La.Code Civ.P. art. 966(A)(2).

Accordingly, we must review the summary judgment *de novo*.

Interpretation of an insurance policy is a question of law, and we have authority to construe the provisions of the policy in order to resolve questions of coverage. *Stoute v. Long*, 98-683 (La.App. 3 Cir. 12/9/98), 722 So.2d 102. "Words susceptible of different meanings must be interpreted as having the meaning that best conforms to the object of the contract." La.Civ.Code art. 2048. "Each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole." La.Civ.Code art. 2050. "A contract executed in a standard form of one party must be interpreted, in case of doubt, in favor of the other party." La.Civ.Code art. 2056. If an exclusionary clause is deemed ambiguous, an insurance policy must be liberally construed in favor of coverage; provisions susceptible of different meanings must be interpreted to render coverage effective rather than ineffective. La.Civ.Code art. 2049; *see Capital Bank & Trust Co. v. Equitable Life Assurance Soc'y*, 542 So.2d 494 (La.1989). If more than one reasonable view of the exclusion proviso exists, "any ambiguity must be construed against the insurance company and in favor of the reasonable construction that affords coverage." *RPM Pizza, Inc. v. Automotive Cas. Ins. Co.*, 601 So.2d 1366, 1369 (La.1992).

4

The policy in question contains exclusions from coverage for losses due to "Bodily injury, property damage or personal injury to any Named Insured's paid, full- or part-time auxiliary or volunteer law enforcement officers," for "Bodily injury to an Insured or an Insured's employees resulting from employment by the Named Insured," and for "Any claims made against an Insured by other Insureds." Coregis argues that these exclusions bar coverage for the claim made by the Plaintiffs. However, the Cross-Liability section of the policy states (emphasis added):

> *This insurance will cover the Insured* against whom a claim is made as if separate policies had been issued to each Insured, *when*;
>
> - *an employee of one Insured makes a claim for personal injuries and/or property damage; and*
>
> - *another Insured is or may be liable.*

Nothing in this policy will increase our Limit of Liability.

We find that the language of the Cross-Liability provision is in conflict with the exclusions listed above, clearly creating an ambiguity as to the coverage afforded under the policy. As such, the ambiguity must be construed against the insurance company and in favor of coverage. *RPM Pizza, Inc.*, 601 So.2d 1366. The trial judge was correct in finding that coverage was afforded the CPSO under the policy, and in granting of the summary judgment in favor of the Plaintiffs.

For their second assignment of error, Coregis claims, as does the CPSO, that the trial court erred in finding them negligent and partly responsible for the death of Deputy McIntosh. We disagree.

As a reviewing court, we may not set aside a trial court's finding of fact in the absence of manifest error or unless it is clearly wrong. In applying the manifest error standard of review, the appellate court must determine not whether the trier of fact was right or wrong, but whether the fact finder's conclusion was a reasonable one.

5

*Stobart v. State, Dep't of Transp. and Dev.*, 617 So.2d 880, (La.1993). Where there are two permissible views of the evidence, a fact finder's choice between them can never be manifestly erroneous or clearly wrong. *Id*. To reverse a fact finder's determination, the appellate court must find from the record that a reasonable factual basis does not exist for the finding of the trial court and that the record establishes that the finding is clearly wrong. *Id*. Likewise, apportionment of fault is a question of fact, subject to the manifest error/clearly wrong standard of review. *Sims v. State Farm Auto Ins. Co.*, 98-1613 (La. 3/2/99), 731 So.2d 197.

It is clear from the record that there is a reasonable factual basis for the findings of the jury in this case. Every police witness who testified stated that a shooting in progress, or a "hot call," is the most critical call that can be received and should be relayed to the deputies in the field and responded to immediately. When Deputy Jackson fielded the call from Mr. Maggio, she yelled out "1280 Sistrunk Road, 34-Sam" loudly enough that everyone in the dispatch room could hear. However, Deputy Patrick claims that, although she heard the 34-Sam, she did not hear the address. Deputy Patrick said she was waiting for more information and took no action to relay the 34-Sam to the deputies in the field. She knew there had been a 34-Sam issued for over three minutes before Deputy McIntosh was killed.

Kenneth Katsaris, an expert in police procedure and dispatch and patrol response, testified that this failure to act was wrong because of the dangers of the situation. He testified that a shooting could put any deputy at risk, and that if Deputy Patrick did not hear the address, she still could have issued a general warning to all deputies in the field that a shooting was occurring, even if she could not dispatch a call to the location. He further testified that if she did not hear the address, it was her duty to ask for it immediately. Likewise, Marty Wittman, a witness for Coregis and

6

the CPSO also testified that after hearing the 34-Sam, the next words out of Deputy Patrick's mouth should have been "what is the other information involved in the call," and that she should have asked for the address.

Furthermore, when Deputy McIntosh reported to Deputy Patrick that he was on Sistrunk Road, it became obvious to others in the dispatch room that he was responding to the same call that Deputy Jackson had issued the 34-Sam about. Deputy Karen Nugent testified that she heard Deputy Jackson issue the call "1280 Sistrunk Road, 34-Sam." She then heard Deputy McIntosh tell Deputy Patrick he was on Sistrunk Road. Deputy Nugent testified that she realized that Deputy McIntosh was in danger and began telling Deputy Patrick "that's the same call." Deputy Victoria Logan, the shift supervisor that night, testified that Deputy Nugent was screaming at Deputy Patrick about the shots fired, asking her to warn Deputy McIntosh. However, Deputy Nugent stated that Deputy Patrick responded with a blank look, "like a deer in the headlights."

Deputy Patrick knew of shots fired three minutes and nineteen seconds prior to Deputy McIntosh being shot, but she did nothing to relay that information to him or any other officer in the field that day. Even if she did not hear the address when Deputy Jackson yelled out the 34-Sam, she did nothing to ascertain it. Furthermore, Deputy Patrick knew Deputy McIntosh's location on Sistrunk Road one minute and fifty-three seconds prior to his being shot there, and while others in the same room realized the danger he was in, she simply failed to act. It is clear from the record that there is a sufficient factual basis to support the findings of the jury that the CPSO was negligent in its failure to warn Deputy McIntosh of the impending risk he faced. There is no manifest error in their decision.

7

For their third assignment of error, Coregis claims that the trial court erred in failing to grant immunity to the CPSO under Louisiana Revised Statutes 9:2798.1. Again, we disagree with this claim. Coregis claims that, under *Gregor v. Argenot Great Cent. Ins. Co.,* 02-1138 (La. 5/20/03), 851 So.2d 959, because there was no statute or regulation governing the training of communication officers or the manner in which radio communications are to be handled, the inactions of Deputy Patrick and the CPSO are discretionary and, therefore, immune from liability. We reject this argument. Such an interpretation would allow law enforcement officers to do virtually anything and be immune from liability so long as there was no precise statute or regulation prohibiting that conduct. Louisiana Revised Statutes 9:2798.1 does not bestow such broad immunity.

Louisiana Revised Statutes 9:2798.1 states, in pertinent part:

> B. Liability shall not be imposed on public entities or their officers or employees based upon the exercise or performance or the failure to exercise or perform their policymaking or discretionary acts when such acts are within the course and scope of their lawful powers and duties.

> C. The provisions of Subsection B of this Section are not applicable:

> (1) To acts or omissions which are not reasonably related to the legitimate governmental objective for which the policymaking or discretionary power exists; or

> (2) To acts or omissions which constitute criminal, fraudulent, malicious, intentional, willful, outrageous, reckless, or flagrant misconduct.

Section (C)(2) of Louisiana Revised Statute 9:2798.1(emphasis added) specifically exempts from immunity "acts or omissions which constitute criminal, fraudulent, malicious, intentional, willful, *outrageous, reckless, or flagrant misconduct*." Deputy Patrick knew of a shooting for over three minutes before Deputy McIntosh was killed. She should have known that he was in the direct

8

vicinity of the shooting for almost two minutes before he was fatally shot. We find Deputy Patrick's complete and utter failure to warn Deputy McIntosh of a shooting in his area to be an outrageous, reckless, and flagrant omission, making her actions, and therefore, the actions of the CPSO, exempt from the immunity offered by Louisiana Revised Statutes 9:2798.1. Furthermore, "[w]hen the government acts negligently for reasons unrelated to public policy consideration, it is liable to those it injures." *Gregor*, 851 So.2d at 968 (*citing Archon v. Union Pac. R.R.*, 94-2728. (La. 6/30/95), 657 So.2d 987, 996).[2]

In their fourth assignment of error, Coregis claims that the trial court violated the Louisiana Direct Action Statute in allowing the Plaintiffs to proceed with their claim against Coregis despite a settlement with the CPSO. The CPSO once again disagrees with its insurer's assertion. It is obvious that the CPSO was never released from the suit and that the action proceeded against both the insured and its insurer, as the CPSO was cast in judgment along with Coregis. The agreement reached between the Plaintiffs and the CPSO simply released the CPSO from any uninsured exposure. This assignment of error has no merit.

For their fifth assignment of error, Coregis claims that the trial court erred in improperly excluding the expert testimony of George Armbruster on the issue of dispatchers' liability. The trial court is accorded vast discretion concerning the admission of evidence, and its decision will not be reversed on appeal absent an abuse

---

[2]We note what seems to be somewhat of an inconsistency in the plurality opinion in the *Gregor* decision. The plurality in *Gregor* states that *Fowler v. Roberts*, 556 So.2d 1 (La.1990), and its progeny are flawed because *Fowler* "went to federal jurisprudence to interpret a dissimilar Louisiana statute to reach the conclusion that the immunity provided for in the Louisiana statute only exists when there is a discretionary act or function '*grounded in social, economic or political policy.*'" *Gregor*, 851 So.2d 967 (emphasis added). The plurality noted that the quoted language is not found in the Louisiana statute. However, when ultimately deciding the issue of immunity, the plurality states the "decision in this case, that the warning over the oyster bar was in compliance with § 23:006-4, [of the sanitary code] was not a decision *grounded in social, economic, or political policy*. It was operational negligence in enforcing the sanitary code." *Id*. at 968 (emphasis added). The plurality then goes on to cite the proposition noted in the *Archon* case we quote above, one of the cases it stated was a flawed progeny of *Fowler*.

of that discretion. *Maddox v. Omni Drilling Corp.*, 96-1673 (La.App. 3 Cir. 8/6/97), 698 So.2d 1022, *writ denied*, 97-2766, 97-2767 (La. 1/30/98), 709 So.2d 706.

The trial judge allowed the expert testimony of Mr. Armbruster as to police procedure, but did not allow him to testify as an expert in police communications and dispatch. The trial judge did not allow Mr. Armbruster to testify as to these issues because he had only six months experience as a dispatcher - less time than Ms. Patrick had on the night of the shooting - and because he was not certified by the Association of Police Communications Officers. We find no abuse of discretion as to the denial of Mr. Armbruster's testimony.

As their next assignment of error, Coregis claims that the trial court erred in making allegedly inappropriate comments on the evidence in open court. These comments were repeated in the local press during the trial. However, we find that the comments were harmless.

"A trial judge has great discretion in the manner in which proceedings are conducted before his court, and it is only upon a showing of gross abuse of discretion that appellate courts intervene." *Briscoe v. Briscoe*, 25,955, p.8 (La.App. 2 Cir. 8/17/94), 641 So.2d 999, 1005. The judge is required to conduct a trial in an orderly, expeditious manner and to control the proceedings so that justice is done. La.Code Civ.P. art. 1631; *Palace Properties, L.L.C. v. Sizeler Hammond Square Ltd. Partnership*, 01-2812 (La.App. 1 Cir.12/30/02), 839 So.2d 82, *writ denied*, 03-306 (La. 4/4/03), 840 So.2d 1219.

In the instant case, based on the record before us, it appears that the trial court conducted the trial in an orderly and expeditious manner. We find no abuse of the trial court's discretion regarding this issue. We agree with Coregis that the trial court's comments could be viewed as inappropriate, should the jury have been

10

present. However, we must note that the comments in question were made outside the presence of the jury, and that the trial court instructed the jury to refrain from reading about the case and to decide the case only on the evidence presented before it. When compared to the entire record, the trial court's comments did not have a substantial effect on the outcome of this case. Accordingly, we find the trial court's comments to be harmless error. "A reviewing court is prohibited from reversing a harmless error." *Preatto v. Tidewater Marine, Inc.*, 00-624, p. 11 (La.App. 4 Cir. 2/6/02), 809 So.2d 1084, 1091, *writ denied*, 02-678 (La. 5/3/02), 815 So.2d 822. This assignment of error, accordingly, lacks merit.

Coregis finally claims that the trial court erred in its award of damages. Coregis challenges the award of general damages given to the minor children of Deputy McIntosh and the award of future earnings based on gross, pre-tax wages.

Our jurisprudence has consistently held that in the assessment of damages, much discretion is left to the judge or jury, and upon appellate review such awards will be disturbed only when there has been a clear abuse of that discretion. *Coco v. Winston Indus., Inc.*, 341 So.2d 332 (La.1976). And, "[i]t is only after articulated analysis of the facts discloses an abuse of discretion, that the award may on appellate review, for articulated reason, be considered either excessive or insufficient." *Reck v. Stevens*, 373 So.2d 498, 501 (La.1979). Appellate courts review the evidence in the light which most favorably supports the judgment to determine whether the trier of fact was clearly wrong in its conclusions. *Arceneaux v. Domingue*, 365 So.2d 1330 (La.1978). Before an appellate court can disturb the amount of an award, the record must clearly reveal that the jury abused its discretion. *Joseph v. Houston*, 04-350 (La.App. 5 Cir. 10/12/04), 886 So.2d 1133.

After reviewing the record, we find no abuse of the trial court's discretion in the amount of damages awarded by the jury. Furthermore, the "proper method to compute loss of earnings is by using gross income rather than net income." *LeBleu v. Dynamic Indus. Const., Inc.*, 526 So.2d 1184, 1189 (La.App. 3 Cir.), *writ denied*, 528 So.2d 154 (La.1988). Hence, the trial court committed no error in basing Deputy McIntosh's future lost wages on his expected gross income rather than his expected net income. This assignment of error also lacks merit.

## THE PLAINTIFFS' ASSIGNMENT OF ERROR

Deputy McIntosh's family also appeals, claiming that the trial court erred in comparing the fault of the CPSO and that of the intentional tortfeasor, Woody Hamilton. We disagree.

In *Morrison v. Kappa Alpha Psi Fraternity*, 31,805 (La.App. 2 Cir. 5/7/99), 738 So.2d 1105, *writs denied*, 99-1607, 99-1622, 99-1668 (La. 9/24/99), 747 So.2d 1120, 749 So.2d 634, 635, the second circuit explained its approval of comparing the fault of an intentional tortfeasor with that of negligent parties. The court stated:

> Plaintiffs argue that the trial court erred in allowing the jury to apportion fault to Jessie Magee, an intentional tortfeasor, and in refusing to instruct the jury on fault apportionment as set forth by the supreme court in *Veazey v. Elmwood Plantation Associates Ltd,*. 93-2818 (La.11/30/94), 650 So.2d 712.

> A divided supreme court in *Veazey*, supra, held that generally, negligent tortfeasors should not be allowed to reduce their fault by the intentional act of another when they had a duty to prevent such intentional conduct. *Veazey* involved the interpretation of La. C.C. art. 2323, Louisiana's comparative fault provision, **prior** to its overhaul by the legislature in 1996.

> In the 1996 Extraordinary Legislative Session, the legislature amended Civil Code articles 2323 and 2324 to require that fault be allocated to all persons causing a plaintiff's injuries (La.C.C. art. 2323) and to limit liability of each wrongdoer, with certain exceptions, to their percentage of fault. (La.C.C. art. 2324).

In *Keith v. United States Fidelity & Guaranty Company*, 96-2075 (La. 05/09/97), 694 So.2d 180, the supreme court held that the 1996 revision of La.C.C. art. 2323 was procedural and to be applied retroactively.

La. C.C. art. 2323 as amended by Act Three of 1996 provides in part:

> **A.  In any action for damages where a person suffers injury, death, or loss, the degree or percentage of fault of all persons causing or contributing to the injury, death, or loss shall be determined**, regardless of whether the person is a party to the action or a nonparty, and regardless of the person's insolvency, ability to pay, immunity by statute, including but not limited to the provisions of R.S. 23:1032, or that the other person's identity is not known or reasonably ascertainable.  If a person suffers injury, death, or loss as the result partly of his own negligence and partly as a result of the fault of another person or persons, the amount of damages recoverable shall be reduced in proportion to the degree or percentage of negligence attributable to the person suffering the injury, death or loss.
>
> **B. The provisions of Paragraph A shall apply to any claim for recovery of damages for injury, death, or loss asserted under any law or legal doctrine or theory of liability, regardless of the basis of liability.** . . .

Given the clear pronouncement of our supreme court on this issue, we find that the trial court properly instructed the jury to compare the fault of all involved actors.

*Morrison*, 738 So.2d at 1112-13 (footnotes omitted)(emphasis in original).

Even more recently, the Louisiana Supreme Court has removed any remaining doubt that Louisiana Civil Code Article 2323 "clearly requires that the fault of every person responsible for a plaintiff's injuries be compared, whether or not they are parties, regardless of the legal theory of liability asserted against each person." *Dumas v. La. Dep't. of Culture, Recreation & Tourism*, 02-563, p.3 (La. 10/15/02), 828 So.2d 530, 537.  *See also Ashmore v. Hilton*, 02-816 (La.App. 3 Cir. 12/11/02), 834 So.2d 1131, *writs denied*, 03-746, 03-750 (La. 5/9/03), 843 So.2d 401, 402. Thus, the jury was required to determine the percentage of fault of Woody Hamilton.

This assignment of error is without merit.

For the reasons assigned, the decision of the trial court is affirmed.  Costs of this appeal are assessed against Coregis Insurance Company.

**AFFIRMED.**